My name is John Cutler. I represent Anayell Nieto Rojas in this matter, and I would like to reserve three minutes for rebuttal. The main issue in this case is whether or not Anayell Nieto Rojas gave consent to search her purse. At a motion to this press held in trial court level, Honorable Judge Windmill, applying the factors found in U.S. v. Brown, found that the consent was voluntarily given. I'd like to focus most of my arguments on the totality of the circumstances that were involved here and applying them to Brown factors, and also noting where one of the key issues was Judge Windmill's decision that she was not in custody. Of course, we have the DVD that shows the whole episode on tape, so it helps us with familiarity. What I think is wonderful about that also is you get to see the same evidence. Usually at this level you don't get to see the witnesses testifying in court and be able to determine their demeanor, but in this case you have a video while you don't see the witnesses and the transcripts there. You do have a video that shows what they're all testifying about and shows what is there without any slant, and so I encourage watching that video. I think I made references to different points in the video that's there. What I think is important as you watch that video, similar to Washington, there's an escalation from maybe the officer being deferential and concerned about their safety to one of more custodial or non-deferential and more confrontive to them. If you remember at the beginning, they get out of the car and they're told to sit on the curb, and the judge references some of this that that is so that they can be safe, and it's true. Another point that's critical, too, is it's true that they were allowed to call and get a ride, but I think it's also critical as you listen to the DVD, it's repeated over and over again, when your ride gets here, you can go with them. That road looked pretty busy now. If the police had just let them walk away on the side of the highway there and someone was hit by a car, they'd probably be in trouble for that. They might be, Your Honor. They're all adults. The road wasn't really geared for a high... But the officer didn't say you can't leave until your ride gets here. That's like an inference, perhaps. It's an interesting inference, but Your Honor, I think in some ways he didn't say you can't leave until your ride gets here, but he didn't say you can leave now either. He didn't say you're free to go. He said when your ride gets here, you can go with your ride. He's saying there's no reason for us to keep you here any longer. We had some 1983 cases involving police who leave someone in a dangerous situation and that's what they would be doing if they just left her there, wouldn't they? Your Honor, it may be, and I think that's maybe part of the tension. Maybe they're not free to go at that point. The officer in his testimony made some comments. They could have gone if they wanted to. I don't think that was clearly elicited to them that they were free to go at any point. It was more when your ride arrives, you can go. And that may be all for public safety, but as it escalates from there, while they're sitting on the side of the curb, more officers arrive. An officer is instructed to watch them, making it feel more custodial to watch them. They're all adults waiting for the ride. Do they need to be watched? Isn't it a matter of common sense that an officer would be watching three people without information possibly that they were involved in drug dealing and may have been armed? Shouldn't the officer be concerned about three people sitting there? If we're taking it from the officer's perspective, I think you're correct. That makes perfect sense for an officer as he's going to go inventory a car to want someone watching these guys not to attack them. If you're taking it from the perspective of Annie L. sitting on the side of the road, and is, am I free to go? It sounds more like, no, I am not free to go. They want someone to watch me. Mr. Cutler, assuming that you're correct and that they are in custody because not free to go,  when Ms. Rosa said, you can look in my purse, that was voluntary. I'm just speaking for myself. As I watched that video, it looked to me like her will wasn't overborne by tough tactics. There was some sit on the curb, this and that, but for whatever reason, with the gun in there, she said, yeah, you go ahead and look. Don't we have to ask even if she's in custody? Was her decision voluntary? This is where I start comparing it to the Washington case. The Washington case, there's two officers present. They pulled them away from the car. Of course, I'm familiar with that. Go ahead. Yes, Your Honor. And I guess what I see in this case is, if you look at the end of that video, where she's being asked to consent, they have pulled her away from her friends on the side of the road. They positioned her next to the car with the door open. Stand here, they say to her. It's very authoritative. They say drugs, they found her here and here. And the officer is between her and her friends. She can't exit that way without getting through the officer, and there is another officer standing behind him. And that is when they first ask her, will you consent to being searched? I see this as similar to the Washington case in that regard. Also, the Washington case made comparison to the size of these officers and the defendant. In this case, Annie Hill is not very tall. These officers are much bigger than she is. They pulled her away from her friends. They put her in the situation where she's isolated by herself, two officers very confronted to her. My argument is, Your Honor, that it is a coercive environment at that moment. Well, is your argument that Judge Windmill erred as a matter of fact in saying that she voluntarily consented or that somehow the circumstances give rise to there being coercion as a matter of law? I hope I can answer this right. I think he erred, and I'm arguing clearer when he finds from the facts that she wasn't in custody or that the facts that he found that there were differential in their tone, that they were free to leave, that they've been advised they were free to leave. Those fact findings, I believe, are clearer. When you get over, just like in Washington, when you find if she was in custody, in this case, like Washington, I think that's a major issue in this case because there are some special circumstances where she's been pulled away, confronted with two officers, and their tone had changed. Just like in Washington, from more deferential to them, a voluntary contact, to becoming more authoritative. All those things are similar in Washington. Washington had some special factors, too, such as the prejudice in the community or the tensions in the community at that time, those things. I think some of the special circumstances here is Judge Windmill made a finding that she was fine with her English. When you throw in the coercion, her English is quite good on the video. At times she appears to be understanding, but if you listen, it's obviously not her native language. There's some hesitation. There's some pauses in interpretation. You throw that in, I think that's a special circumstance in this case when you start putting the pressure to bear on them that the language becomes more important. I'm going to save some of your time for rebuttal. Thank you, Your Honor. Yes. Mr. Ficca, am I pronouncing that right? Your Honor, it's Ficca. Mr. Ficca. Thank you, Your Honor. May it please the Court. Counsel, as mentioned, my name is Michael Ficca. I'm an assistant United States attorney in the District of Idaho. I was also counsel during the trial court and, in fact, participated in the suppression hearing in this matter. Your Honor, the government's position as set forth in its briefs is that Judge Windmill did, in fact, consider the totality of the circumstances, looked at all factors, including the ones enumerated, as well as other factors, and then consequently made a ruling that was not clearly erroneous, that Ms. Rojas was not in custody, and that she, in fact, had voluntarily consented to a search of her purse. Judge Windmill recognized, and one of the first issues raised by counsel in his briefs are that Judge Windmill only considered the mechanical five-step process in determining voluntariness. But I would note at page 11 of the district court decision, Judge Windmill specifically recognizes that, and I quote, whether consent to a search was voluntarily given is, and Judge Windmill then quotes the Sheck and Cloth decision, is to be determined from a totality of all the circumstances. Judge Windmill then goes in and focuses on the issue of custody because that clearly was a primary issue that was litigated at the district court level during the suppression hearing. And that's where the focus of Judge Windmill's decision was. But he did consider all factors, and he clearly looked at a totality of the circumstances. Assume for a minute that the panel ends up disagreeing with Judge Windmill on the custody fact. And obviously this case has a lot of differences from Washington, so I'm not saying that's necessary. We would conclude that. But just assuming that we did, what's your analysis on the total circumstances as to whether it's a voluntary consent even if she's in custody? Your Honor, the government's position would be even if she was determined to be in custody, it's still a voluntary consent. Again, the totality of the circumstances applies to the overall question of whether the consent was voluntary. To that, Your Honor, I would analogize to the Brown decision, which I know Your Honor is also familiar with. I suggest that in that respect, I guess I would characterize it this way. What I take from the Brown decision is custody is not in and of itself a controlling factor.  As in the totality of the circumstances. Put another way, Your Honor, even if she was found to be technically in custody, there still is the question of how she was treated and whether her will was overborne. And you look to, and I know the court is familiar with this from the video, but even up until the defendant actually consented to the search of the purse, the officers were deferential to her. The last colloquy between herself and the officers shows deference when she essentially says, it's okay. And the officer doesn't then snatch the purse from her and begin searching. He says, are you saying it's okay? He's very deferential to her in that regard. Your Honor, the other point that I would make that I think is very telling given the facts of this case, and understanding that the standard here is what a reasonable person would think. But I think it still is important, and Judge Windmill considered, in fact, what Ms. Rojas was thinking at that point. And Ms. Rojas testified, and Judge Windmill talks about this, that Ms. Rojas testified, and I refer to page 5 and page 6 of his decision, that at a certain point she felt like she was in custody. And again, I recognize that it's not necessarily what she felt, but what a reasonable person felt. She testified that at a certain point she felt like she was in custody. And Judge Windmill acknowledged that even after she said that she felt like she was in custody, even then the officers are telling her, when your ride gets here, you can go. In fact, the quote was, and this was after she testified that she felt like she was in custody, the trooper said to her, come back here and wait for your ride. Come back here, grab your drink. Wouldn't, I guess when I read this, I had in my mind the question that maybe isn't quite presented here. But if she had said, you can't search my purse, wouldn't it seem likely that she would have been arrested then? Because they've been told by the Idaho police that we think these people are involved. Well, Your Honor, there's some question to that. We don't really know the answer. We don't know the answer to that. What we do know is that, and I argued this at the district court level to some extent, although the district court didn't ultimately address this issue, was whether or not, regardless, there was probable cause. But that's really sort of a non-issue because it didn't become relevant here. What we do know, and the court brought this up during opposing counsel's argument, is that at one point the officer testified, although it was a busy highway, that had she said, you know what, I don't want to wait for my ride anymore, I want to leave, I would have let her leave. And so in that respect, Your Honor, at least up until the dog had indicated on the vehicle, there's nothing in the record to suggest that had she essentially said, I'm walking away from here right now, you're not searching anything. How about once the dog jumped into the front seat and alerted on some drug there? Was she in custody then? Your Honor, if the question is whether or not she was in custody, my position is no, she's not. And I can address that here in a minute. But I do want to answer the question the court asked just a moment ago. If the question is whether or not at that point they would have searched her purse regardless, I don't know the answer to that. That's not in the record. As to whether or not she's in custody, I would say at that point, no. And counsel suggests that that in and of itself may push it over the edge. But to that end, Your Honor, I would acknowledge or I think it needs to be acknowledged that the district court made a factual finding that the dog had indicated and that that was communicated to her. And the district court acknowledged that that was a factor that came into the question of whether or not her consent was voluntary. But it still, when weighing all the facts and the totality of the circumstances, Your Honor, still felt that that was outweighed by the other factors that played into the question of voluntariness. She was seized by the officer when he stopped her for the traffic violation. That's correct, Your Honor. When did that seizure end of her purse? Your Honor, that seizure would have ended when she was given citations. She was given citations for driving without a license. She was also given a citation for transporting beer across state lines. And I would note, Your Honor, that in that regard, that was communicated to her because when she was given those citations, she was told she would have to appear in court for those citations. So that further supported the district court's conclusion that at that point she was free to go or at least knew that she wasn't in custody because she was specifically told not, we're going to take you to court, but that you're going to have to appear in court, as would anybody who received a routine traffic citation. She got three citations, right? She did, Your Honor. And I forget what the third one was for. Tinted windows. Tinted windows. That's correct, Your Honor. And clearly this was a pretextual stop. Clearly, we absolutely acknowledge that. Once they discovered she didn't have a license, I take it then they had to impound the car? Absolutely, per their policy. And at that point they comported with the routine inventory policy. Absolutely. Although, again, Your Honor, we perfectly acknowledge that it was a pretextual stop, that the drug dog was there because of what had led up to the circumstances. The Supreme Court says that's okay. Absolutely, Your Honor. Okay, thank you. Thank you. Okay, Mr. Cutler. Thank you, Your Honor. I'll just address a couple things. One is the question asked of whether or not if she's in custody, would that change the analysis of the judge? And the judge did look at all the factors in there. But I think when you look at if she is in custody, I think the issue becomes more important about her language skills. I think the issue also becomes more important about whether or not she is notified she does not have to consent. And some of those other factors become a little bit more important than if she's not in custody. And, again, I think similar analysis was made in the Washington case. Once they found that the court below was wrong in finding she was not in custody, they went through and emphasized some of the other factors as being more important. I believe that's similar here. And we'd ask you to find that the consent was not voluntary. Thank you. Thank you, Mr. Cutler. Very interesting case. And we thank both counsel for their well-taken arguments. And I hope you have a good trip back to Idaho. Thank you.
judges: Schroeder, Alarcon, Gould